UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT d/b/a BEST WAY AUTO
SALES,
JAMES SCOTT, and HELEN SCOTT,
     Individually,

    **Plaintiffs**

              v.

OFFICER KEVIN REIF,
     In individual and official capacities,
LIEUTENANT RAY COLLINS,
     In individual and official capacities,
CITY OF REDFORD- POLICE
DEPARTMENT, a Michigan Municipal
Corporation
JOHN DOE OFFICER,
     In individual and official capacities,
JANE DOE OFFICERS,
     In individual and official capacities,
UNNAMED CITIES PATICIPATING IN
DRANO AND WWATU, a Michigan
Municipal Corporation,
STATE OF MICHIGAN,
DRANO
GENE'S TOWING, INC.,
     A Michigan Corporation,
CITY OF REDFORD,
    A Michigan Municipal Corporation,
CITY OF ALLEN PARK,
    A Michigan Municipal Corporation,
CITY OF BROWNSTOWN TOWNSHIP,
    A Michigan Municipal Corporation,
CITY OF ECORSE,
    A Michigan Municipal Corporation,
CITY OF FLAT ROCK,
    A Michigan Municipal Corporation,

Case No.

Hon.

1

CITY OF GIBRALTAR,
    A Michigan Municipal Corporation,
CITY OF GROSSE ILLE,
    A Michigan Municipal Corporation,
CITY OF HURON CHARTER TOWNSHIP,
    A Michigan Municipal Corporation,
CITY OF LINCOLN PARK,
    A Michigan Municipal Corporation,
CITY OF MELVINDALE,
    A Michigan Municipal Corporation,
CITY OF RIVER ROUGE,
    A Michigan Municipal Corporation,
CITY OF RIVERVIEW,
    A Michigan Municipal Corporation,
CITY OF ROCKWOOD,
    A Michigan Municipal Corporation,
CITY OF ROMULUS,
    A Michigan Municipal Corporation,
CITY OF SOUTHGATE,
    A Michigan Municipal Corporation,
CITY OF TAYLOR,
    A Michigan Municipal Corporation,
CITY OF TRENTON,
    A Michigan Municipal Corporation,
CITY OF WOODHAVEN,
    A Michigan Municipal Corporation,,
CITY OF WYANDOTTE,
    A Michigan Municipal Corporation,

**Defendants.**

BROWN AND BROWN, PLC
Matthew C. Brown (40078)
Matthew J Brown (P73030)
Co-Counsel for Plaintiffs
838 W Long Lake Rd #100
Bloomfield Hills, MI 48302
(248) 454-1120
matthew.brown.j@gmail.com

Jeffrey Z Dworin (P53481)
Attorney for Plaintiff Helen Scott
838 W Long Lake Rd #100
Bloomfield Hills, MI 48302
248-322-9900
dworinlaw@comcast.net

There was a previous writ of mandamus case involving these
Plaintiffs and some of the listed Defendants in Wayne County
Circuit Court case number 12-005378-AW that was dismissed,
however, none of the claims in this case have or could have ever
been litigated in a court of law.

/s/ Matthew C. Brown

MATTHEW C. BROWN

## COMPLAINT AND JURY DEMAND

Plaintiffs state the following for their complaint:

## PARTIES

1.  Plaintiff JAMES SCOTT d/b/a BEST WAY AUTO SALES ("Bestway")

    operates a business with its office in Detroit, Michigan.

2.  Plaintiff James Scott ("James") is an individual who resided in Detroit,

    Michigan at all relevant times.

3.  Plaintiff Helen Scott ("Helen Scott") is an individual who resided in Detroit,

    Michigan at all relevant times.

4.  Defendant Officer Kevin Reif ("Reif") is an individual employed as a

    Detective Police officer by the City of Redford Township Police Department.

5.  Reif was at relevant times assigned to the Michigan State Police Western

    Wayne Auto Theft Unit.

6.  Defendant Lieutenant Ray Collins ("Collins") is an individual employed as a

    police officer by Michigan State Police.

3

7. Collins was the supervisor of Reif on the Western Wayne Auto Theft Unit.

8. Defendant City of Redford ("Redford") is a Michigan municipal corporation with its principal office in Redford, Wayne County, Michigan.

9. Redford operates a police department as part of its municipal activities.

10. Upon information and belief, Defendant John Doe Officer is an individual employed as a police officer in Wayne County, Michigan who also works with Western Wayne Auto Theft.

11. Upon information and belief, Defendant Jane Doe Officer is an individual employed as a police officer in Wayne County, Michigan who also works with Western Wayne Auto Theft.

12. Upon information and belief, Defendant Unnamed Police Officers participate in Western Wayne Auto Theft Unit ("WWATU") which comprises a task force of several police departments in the Wayne County area.

13. Upon information and belief the Downriver Area Narcotics Organization ("DRANO") is a multijurisdictional police task force that also participated in the illegal raid and is made up of the following Defendant Cities hereinafter ("DRANO")

     a. City of Allen Park

     b. City of Brownstown

     c. City of Ecorse

4

    d.  City of Flat Rock

    e.  City of Gibraltar,

    f.  City of Grosse Ille,

    g.  City of Huron Charter Township,

    h.  City of Lincoln Park,

    i.  City of Melvindale,

    j.  City of River Rouge,

    k.  City of Riverview,

    l.  City of Rockwood,

    m. City of Romulus,

    n.  City of Southgate,

    o.  City of Taylor,

    p.  City of Trenton,

    q.  City of Woodhaven,

    r.  City of Wyandotte

14.  Defendant Gene's Towing, Inc ("Gene's") is a Michigan corporation with its principal office in Detroit, Michigan.

## JURISDICTION AND VENUE

15.  Jurisdiction is proper based on the Federal Question(s) involved, 28 USC § 1331.

16. Supplemental jurisdiction over state law claims is proper based on 28 USC § 1367.

17. Venue is proper in this Honorable Court because all parties reside within the Judicial District:

## FACTS

18. Bestway sells used cars, scrapped automobiles and auto parts.

19. Bestway is licensed to carry out the above business.

20. Bestway purchases junk cars from over three hundred independent-contractor tow truck drivers it contracted with to sell scrapped vehicles on Bestway's account.

21. The contracts require that the vehicles be sold with all necessary legal paperwork and title in order. (Exhibit A; Sample Contract)

22. The drivers delivered the cars bought under Bestway Auto Sales license under contract as independent tow truck drivers.

23. The tow truck drivers solicit, purchase and take delivery of junk cars from the public by their own advertisement as independent drivers.

24. Bestway may, but does not always, purchase certain automobile parts separately.

25. The drivers deliver the junk cars to a scrap processor on Bestway's account.

26. The drivers are required to obtain a valid legal title to each car.

27.   Each independent contractor uses a unique numbered stamp from Bestway for all cars they deliver and sold by the driver.

28.   Bestway requires each independent contractor to have the original title to the car it intends to scrap before using its' unique Bestway stamp on documents given to the scrap yard.

29.   After the driver delivers the junk car to the scrap processor under its unique Bestway Stamp, the driver is paid by Bestway for the scrapped vehicle.

30.   Bestway is then paid by the scrap yard.

31.   The transactions are in cash and Bestway maintains full records.

32.   The drivers assume all liability for the cars taken to scrap yards under their unique Bestway stamp.

33.   On February 2, 2012, a team of Police officers from WWATU executed a search warrant on Bestway Auto Sales in Detroit, Michigan and at the home of James and Helen.

34.   The search warrant was signed based on an affidavit presented and sworn to by Defendant Reif.  (Exhibit B Search Warrant and Affidavit.)

35.   Reif made material omissions and misrepresentations in his affidavit.

36.   Reif averred that he verified 44 vehicles as stolen.

37.    Reif averred that he had two years of training experience with WWATU.

7

38. Officer Reif averred that he spoke to all the vehicle owners to verify the vehicles were stolen.

39. Reif averred that he obtained a copy of Strong Steel, the scrap processors', police book and checked **every vehicle** Bestway Auto Sales sold for scrap from January 2011 until December 2011.

40. Plaintiffs delivered approximately 10,000 vehicles during this time period that Officer Reif claims to have run such checks.

41. Plaintiffs hired a private investigator and former Detroit Police Officer Joseph Bruce ("Bruce") to investigate the matter.

42. Bruce investigated the matter.

43. Bruce determined that many of Officer Reif's representations made in order to get the search warrant issued were false.

44. The falsity was such as should have been known to Officer Reif.

45. The officers restrained Plaintiffs' daughter, who was working in the office, in a manner that prevented her from observing the search.

46. The officers did not search the house until Plaintiffs had left, allowing the officers to break in the door and conduct the search unobserved.

47. The officers seized $180,000.00 from the safe at the home of James and Helen.

48. The warrant did not mention a safe.

49. The safe was broken open and the house was left in ruins.

50. The Return to Search Warrant drafted by an officer from WWATU falsely reported that the amount of cash seized from the safe was $100.00.

51. The amount seized was $180,000.

52. The warrant did not call for the seizure of cash.

53. During the raid, Collins said "Let's take everything so we can make sure he won't be able to open for business on Monday."

54. Plaintiff's daughter was handcuffed while the raid was being conducted and was told, "Don't look in here."

55. Following the search and seizure of property from Bestway and the home, WWATU requested an arrest warrant for James Scott from the Wayne County Prosecutor's Office.

56. The prosecutor denied the Western Wayne Auto Theft Units request for an arrest Warrant. (Exhibit C; letter from prosecutor denying arrest warrant).

57. WWATU continued to pursue matter in a way that would harass and damage Plaintiffs.

58. WWATU began contacting each of the tow truck drivers to solicit testimony against Plaintiffs.

59. WWATU offered the drivers, who were contractually responsible for the veracity and status of the titles to cars they delivered to the scrap processor, immunity from prosecution in an effort to persuade drivers to testify falsely.

60. This was an attempt to fabricate evidence of a crime.

61. Defendants then tried to obtain an Arrest Warrant from the State Attorney General's office.

62. The Attorney General's office reviewed the material and determined that there was no case.  (See Exhibit D Letter).

63. As a result of the Police Officers continued harassment of the tow truck drivers, a majority of the tow truck drivers will no longer do business with Plaintiffs for fear of arrest, prosecution or retaliation by the officers.

64. These tow truck drivers who sell junk cars under contract to Bestway are essential for the operation of its business.

65. Plaintiffs' business has been severely harmed by the loss of the majority of their independent contractors and the ensuing loss of revenue proximately caused by Defendants.

66. Plaintiffs have suffered irreparable harm as a result of this tortuous interference with contract and advantageous business relationships.

67. Defendants have failed and refused to return all of the property seized.

68.  The property that Defendants have failed to return is essential for the continuing operation of their business, including:

    a.  16 high end luxury cars that were to be sold as used automobiles.

    b.  6 truck vehicles essential for the operation of Bestway, which consist of three delivery trucks, a wrecker and a flatbed truck.

69.  Plaintiffs' vehicles are wrongfully detained by Defendants.

70.  Despite false claims by Defendants that they no longer hold Plaintiffs' vehicles, Plaintiffs cannot retrieve the vehicles unless Plaintiffs pay storage charges from Defendants' vendors in excess of $50,000 and growing every day.

71.  The $50,000 plus towing charges are the result of Defendants' improper actions.

72.  In addition, the Defendants have failed and refused to return any of the $180,000 dollars seized from the home.

73.  Plaintiffs were in the process of purchasing a new home and were meeting with a real estate agent the day the money was taken.

74.  As a result of Defendants' actions, Plaintiffs suffered and continue to suffer damages, including but not limited to:

    a.  Destruction of Plaintiffs' business, business opportunities, business relationships, expectancies, and opportunities;

    b.  Loss of revenues and profits

    c.  Loss of $180,000 in cash;

    d.  Destruction of Plaintiffs' safe and significant damage to their home;

    e.  Loss of 16 Luxury automobiles;

    f.  Loss of six vehicles essential for business operations which include delivery trucks, flatbeds and wreckers.

    g.  Psychological damages;

    h.  Mental Anguish, Mental Pain and Suffering;

    i.  Attorney Fees;

    j.  Costs;

    k.  Embarrassment and humiliation.

75. The search and continued seizure of Plaintiffs' property was unlawful.

76. The Officer Defendants' actions in this matter arose from the improper exercise of their job functions.

77. The Defendant Cities, through their police departments, failed to properly train Officers as to how appropriately investigate, swear to warrants, issue search warrants and return citizens' property conduct raids.

78. The Defendant State of Michigan, through their police department, failed to properly train Officers as to how appropriately investigate, swear to warrants, issue search warrants and return citizens' property conduct raids.

79. Gene's stored, held, and converted, and assisted with the conversion of

Plaintiffs' personal property.


## COUNT I
## STATUTORY CONVERSION BY OFFICER DEFENDANTS AND GENE'S

80. Plaintiffs incorporates all prior paragraphs by reference as though restated

herein.

81. MCL 600.2919a provides that:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

82. Plaintiffs, at all relevant times maintained a safe in their home.

83. Plaintiffs had recently taken $180,000 dollars from their bank account to put

toward the purchase of a new home.

84. Plaintiffs stored this $180,000 in cash in their safe.

13

85. Defendants, during the execution of their Search Warrant, among other damages, forcibly broke open Plaintiffs' safe and removed $180,000 dollars in cash.

86. Defendants removed significant personalty from Bestway, including luxury cars and trucks used in Bestway's operations.

87. Defendants were denied an arrest warrant by both the Wayne County Prosecutor's Office and the State Attorney General's Office.

88. Plaintiffs have demanded the return of the $180,000.00 dollars and other personal property.

89. Defendants have unlawfully taken and asserted dominance over $180,000 dollars of Plaintiffs' money and other personal property, and have converted it to their own use.

90. Defendants have converted Plaintiffs' personal property for their own benefit

91. Defendants enabled their vendors to convert Plaintiffs' personal property for their own benefit.

92. The acts described above constitute an unlawful conversion of Plaintiffs' property.

93. The conversion resulted in damages to Plaintiffs.

94. The defense of governmental immunity does not apply to conversion, M.C.L.A. 691.1407(3).

95. The Officer Defendants intended to convert the money and personal property to their own use in the manner that occurred.

96. The Officer Defendants' actions were such as might arise out of their employment.

97. Cities are vicariously liable for the damages caused by the Officer Defendants' actions.

98. The Defendant State of Michigan is vicariously liable for the damages caused by the Officer Defendants' actions.

99. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages of $180,000.00 plus the value of personal property taken.

100. Pursuant to Michigan Law Plaintiffs are entitled to Treble Damages and attorney fees for Defendants' actions, MCL 600.2919a.

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and in Plaintiffs' favor in the amount of $540,000.00 plus three times the value of the personal property taken, as well as exemplary damages, punitive damages, interest, costs, attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT II
## COMMON LAW CONVERSION BY OFFICER DEFENDANTS AND GENE'S

101. Plaintiffs incorporates all prior paragraphs by reference as though restated herein.

102. Plaintiffs, at all relevant times maintained a safe in their home.

103. Plaintiffs had recently taken $180,000 dollars out to put toward the purchase of a new home.

104. Plaintiffs stored this $180,000 in cash in their safe located at their home.

105. Defendants, during the execution of their Search Warrant, among other damages, broke open Plaintiffs' safe and removed $180,000 dollars in cash.

106. Defendants removed significant personalty from Bestway, including luxury cars and trucks used in Bestway's operations.

107. Defendants were denied an arrest warrant by both the Wayne County Prosecutor's Office and the State Attorney General's Office.

108. Plaintiffs have demanded the return of the $180,000.00 dollars and other personalty.

109. Defendants have unlawfully taken and asserted dominance over $180,000 dollars of Plaintiffs' money and have converted it to their own use.

110. Defendants have converted Plaintiffs' personal property for their own benefit.

111. Defendants enabled their vendors to convert Plaintiffs' personal property for their own benefit.

112. The acts described above constitute an unlawful conversion of Plaintiffs' property, resulting in damages to Plaintiffs.

113. The defense of governmental immunity does not apply to conversion, M.C.L.A. 691.1407(3).

114. The Officer Defendants intended to convert the money and personal property to their own use in the manner that occurred.

115. The Officer Defendants' actions were such as might arise out of their employment.

116. Cities are vicariously liable for the damages caused by the Officer Defendants' actions.

117. Defendant State of Michigan is vicariously liable for the damages caused by the Officer Defendants' actions.

118. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages of $180,000.00 plus the value of personal property taken.

119. Pursuant to Michigan Law Plaintiffs are entitled to Treble Damages and attorney fees for Defendants' actions.

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and in Plaintiffs' favor in the amount of $180,000.00 plus the

value of the personal property taken, as well as exemplary damages, punitive damages, interest, costs, attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT III
## TRESPASS TO CHATTEL

120. Plaintiffs incorporate all prior paragraphs by reference as though restated herein.

121. A trespass to a chattel may be committed by intentionally intermeddling with a chattel in the possession of another, Restatement of the Law of Torts 2d, § 217.

122. The intention required is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such intermeddling will, to a substantial certainty, result from the act, *Id.*

123. Defendants intentionally intermeddled with cash and personal property belonging to Plaintiffs.

124. Plaintiffs have been damaged by the intermeddling.

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and in Plaintiffs' favor for compensatory damages, as well as exemplary damages, punitive damages, interest, costs, attorney fees so wrongfully

sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT IV

## GROSS NEGLIGENCE AS TO OFFICER DEFENDANTS

125. Plaintiffs incorporate all prior paragraphs by reference as though restated herein.

126. Michigan law denies governmental immunity for an officer's conduct that amounts to gross negligence, defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(2)(c).

127. The Officer Defendants owed Plaintiffs a duty to avoid injuring/damaging their business, returning their property, properly investigate facts before pursuing a search warrant and in being honest before swearing to an affidavit for issuance of a search warrant.

128. The Officer Defendants' actions were reckless.

129. The Officer Defendants' actions displayed a wanton and willful disregard for Plaintiffs' business operations, reputation, business relationships, expectancies and the prompt return of Plaintiffs' property.

130. The Officer Defendants knew or should have known that Plaintiffs were certain to suffer damages if they did not, properly investigate facts before

pursuing a search warrant and be honest before swearing to an affidavit for issuance of a search warrant.

131. The Officer Defendants' actions displayed a wanton and willful disregard for Plaintiffs' business operations, reputation, business relationships, expectancies and the prompt return of Plaintiffs' property.

132. The Officer Defendants' actions displayed a wanton and willful disregard for whether or not an injury was likely to occur.

133. The Officer Defendants' actions arose out of their employment.

134. The City Defendants are vicariously liable for the damages caused by the Officer defendants' actions.

135. Defendant State of Michigan is vicariously liable for the damages caused by the Officer Defendants' actions.

136. As a direct and proximate result of Defendants' actions, Plaintiffs sustained serious injuries to their business and finances as well as psychological injuries and damages, including, but not limited to:

    a. Loss of $180,000 dollars stolen in the police raid;

    b. 16 cars and 5 essential vehicles needed to run the business have not been returned;

c. $50,000 in outstanding tow bills are owed as a result of the Police raid and $280 dollars in fines are being assessed daily as Plaintiffs no longer have the money to pay due to Defendants actions;

d. Loss of tow truck drivers essential to run the business;

e. Loss of business opportunities;

f. Loss of Gross Revenue and Profits from decrease in business;

g. Embarrassment, humiliation and loss of business opportunities;

h. Mental anguish, psychological harm.

WHEREFORE, PLAINTIFF REQUESTS that this Honorable Court enter judgment against Defendants and in Plaintiffs' favor in the amount determined, as well as exemplary damages, punitive damages, interest, costs and attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT V
## WANTON & WILLFUL MISCONDUCT BY OFFICER DEFENDANTS

137. Plaintiffs incorporates all prior paragraphs by reference as though restated herein.

139. The elements of Willful and Wanton Misconduct are:

a. Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another;

21

b. Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand;

c. The omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

*Tien v. Barkel*, 351 Mich. 276, 281- 282, 88 N.W.2d 552, 555 (1958).

140. Michigan law denies governmental immunity for an officer's conduct that is conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(2)(c).

141. The situation giving rise to this civil action required ordinary care and diligence to avoid causing an injury to Plaintiffs and their business.

142. The Officer Defendants knew of the situation.

143. The Officer Defendants could have avoided the resulting harm by the exercise of ordinary care and diligence.

144. The Officer Defendants omitted to use ordinary care and diligence.

145. The Officer Defendants' actions displayed a substantial lack of concern for whether or not an injury was likely to occur.

146. The Officer Defendants' actions were such as might arise out of their employment.

147. Defendant Cities are vicariously liable for the damages caused by the Officer Defendants' actions.

148. Defendant State of Michigan is vicariously liable for the damages caused by the Officer Defendants' actions.

149. As a direct and proximate result of Defendants' actions, Plaintiff sustained serious damages cause to their business, psychological injuries and damages, including, but not limited to:

   a. Loss of $180,000 dollars stolen in the police raid;

   b. 16 used luxury cars and 5 vehicles essential to run the business have not been returned;

   c. $50,000 in outstanding tow bill are owed as a result of the Police raid and $280 dollars in fines are being assessed daily as Plaintiffs no long have the money to pay due to Defendants' actions;

   d. Loss of tow truck drivers essential to run the business;

   e. Loss of business opportunities;

   f. Loss of Gross Revenue and Profits from decrease in business;

   g. Embarrassment, humiliation and loss of business opportunities;

   h. Mental anguish and psychological harm;

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and in Plaintiffs' favor in the amount determined, plus

exemplary damages, punitive damages, interest, costs and attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT VI
## VICARIOUS LIABILITY AS TO STATE LAW TORTS

150. Plaintiffs incorporates all prior paragraphs by reference as though restated herein.

151. The Officer Defendants were employees of the City Defendants.

152. The Officer Defendants' actions were such as might arise out of the performance of their employment duties.

153. The Officer Defendants' tortuous conduct arose out of the performance of their employment duties.

154. The City Defendants are vicariously liable for the damages inflicted on Plaintiff by the Officer Defendants' tortuous acts.

155. Defendant State of Michigan is vicariously liable for the damages caused by the Officer Defendants' actions.

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and in Plaintiffs' favor in the amount determined, plus exemplary damages, punitive damages, interest, costs and attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT VII
## 42 USC § 1983 – VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS BY OFFICER DEFENDANTS

156.  Plaintiffs incorporates all prior paragraphs by reference as though restated herein.

157.  42 U.S.C. §1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

158.  The Officer Defendants deprived Plaintiffs of "rights, privileges, or immunities secured by the Constitution and laws" of the United States as follows:

a.  Defendants violated Plaintiffs' 4th Amendment right to be free of unlawful search and seizure when they unlawfully and by force seized Plaintiffs' business property, and $180,000 in cash.

b.  Defendants violated Plaintiffs' 4th Amendment right by failing to return their property after the Prosecution declined to bring charges and their continued failure to return property as of today.

c.  Defendants violated Plaintiffs' 4th Amendment right to be free of unlawful search when Defendant Officer made many

misrepresentations and lies in order to get a search warrant issued by the magistrate.

d. Defendants violated Plaintiffs' 5th and/or 14th Amendment right to Due Process of Law when they deprived Plaintiffs' of life, liberty, or property without due process.

e. Defendants violated Plaintiffs' 5th and/or 14th Amendment right to Due Process of Law through their unjustified intrusion on Plaintiffs' personal security and failure to return Plaintiffs property and money.

159. Defendants knew or should have known that they were violating Plaintiffs' constitutional rights.

160. The constitutional rights violated were such as should be known to an average police officer.

161. The deprivations were by government officers acting in an official governmental and/or individual capacity.

162. As a direct and proximate result of Defendants' actions, Plaintiff sustained serious financial, physical and psychological injuries and damages, including, but not limited to:

a. Loss of $180,000 dollars stolen in the police raid;

b. 16 cars and 5 vehicles essential to run the business have not been returned;

c. $50,000 in outstanding tow bill are owed as a result of the Police raid and $280 dollars in fines are being assessed daily as Plaintiffs no long have the money to pay due to Defendants' actions;

d. Loss of tow truck drivers essential to run the business;

e. Loss of business opportunities;

f. Loss of Gross Revenue and Profits from decrease in business;

g. Embarrassment, humiliation and loss of business opportunities;

h. Mental anguish and psychological damages;

WHEREFORE, PLAINTIFF REQUESTS that this Honorable Court enter judgment against Defendants, and in Plaintiffs' favor in the amount determined, plus exemplary damages, punitive damages, interest, costs and attorney fees pursuant to 42 USC 1988, and all other legal and equitable relief as this Honorable Court may award.

## COUNT VIII
## 42 USC § 1983 – VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS BY CITY DEFENDANTS

163. Plaintiffs incorporates all prior paragraphs by reference as though restated herein.

164. 42 U.S.C. §1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

165. The City Defendants knew or should have known the damages caused by defendant officers by their failure to return business property and personal property of Plaintiffs.

166. The City Defendants could have taken corrective measures or properly train officer Defendants to avoid the damages caused by Officer Defendants to Plaintiffs.

167. The City's Defendants' failure to train its police officers deprived Plaintiffs of of "rights, privileges, or immunities secured by the Constitution and laws" of the United States as follows:

    a. Defendants violated Plaintiff's 4th Amendment right to be free of unlawful search and seizure when they unlawfully and by force seized Plaintiffs' property.

    b. Defendants violated Plaintiffs' 4th Amendment right to be free of unlawful search and seizure when they unlawfully allowed a search warrant to be executed on material misrepresentations.

    c.  Defendants violated Plaintiffs' 4th Amendment right to be free of unlawful search and seizure through the failure to return the $180,000 seized by defendant officers.

    d.  Defendants violated Plaintiffs' 5th and/or 14th Amendment right to Due Process of Law when they deprived Plaintiffs of life, liberty, or property without due process.

    e.  Defendants violated Plaintiffs' 5th and/or 14th Amendment right to Due Process of Law through their unjustified intrusion on Plaintiffs' personal security and business with no evidence of a crime.

168.  Defendant State of Michigan knew or should have known the damages caused by defendant officers by their failure to return business property and personal property of Plaintiffs.

169.  Defendant State of Michigan could have taken corrective measures or properly train officer Defendants to avoid the damages caused by Officer Defendants to Plaintiffs.

170.  Defendant State of Michigan failure to train its police officers deprived Plaintiffs of of "rights, privileges, or immunities secured by the Constitution and laws" of the United States as follows:

a.   Defendants violated Plaintiff's 4th Amendment right to be free of unlawful search and seizure when they unlawfully and by force seized Plaintiffs' property.

b.   Defendants violated Plaintiffs' 4th Amendment right to be free of unlawful search and seizure when they unlawfully allowed a search warrant to be executed on material misrepresentations.

c.   Defendants violated Plaintiffs' 4th Amendment right to be free of unlawful search and seizure through the failure to return the $180,000 seized by defendant officers.

d.   Defendants violated Plaintiffs' 5th and/or 14th Amendment right to Due Process of Law when they deprived Plaintiffs of life, liberty, or property without due process.

e.   Defendants violated Plaintiffs' 5th and/or 14th Amendment right to Due Process of Law through their unjustified intrusion on Plaintiffs' personal security and business with no evidence of a crime.

171. Defendants knew or should have known that they were violating Plaintiffs' constitutional rights.

172. The deprivations were by government officers acting in an official governmental capacity.

173. As a direct and proximate result of Defendants' actions, Plaintiffs sustained serious physical and psychological injuries and damages, including, but not limited to:

    a.  Loss of $180,000 dollars stolen in the police raid;

    b.  16 cars and 5 vehicles essential to run the business have not been returned;

    c.  $50,000 in outstanding tow bill are owed as a result of the Police raid and $280 dollars in fines are being assessed daily as Plaintiffs no long have the money to pay due to Defendants' actions;

    d.  Loss of tow truck drivers essential to run the business;

    e.  Loss of business opportunities;

    f.  Loss of Gross Revenue and Profits from decrease in business;

    g.  Embarrassment, humiliation and loss of business opportunities;

    h.  Mental Anguish and Psychological damages;

WHEREFORE, PLAINTIFF REQUESTS that this Honorable Court enter judgment against Defendants City, and in Plaintiffs' favor in the amount determined, plus exemplary damages, punitive damages, interest, costs and attorney fees pursuant to 42 USC 1988, and all other legal and equitable relief as this Honorable Court may award.

## COUNT IX

## TORTIOUS INTERFERENCE WITH CONTRACT, ADVANTAGEOUS BUSINESS RELATIONSHIP OR EXPECTANCE

174. Plaintiffs incorporates all prior paragraphs by reference as though restated herein.

175. Defendants' behavior as set forth above constitutes an action for tortuous interference with a contract, advantageous business relationships or expectancy because:

a. The above named Plaintiffs had a contract/advantageous business relationship or expectancy with numerous long term independent contractors (tow truck drivers);

b. Defendant Officers had specific knowledge of these advantageous business relationships or expectancies;

c. Defendant Officers' conduct constitutes intentional and improper interference which has induced or caused a breach, disruption, or termination of a contract or the advantageous business relationship or expectancy;

d. The conduct of Defendants has resulted in damage to Plaintiffs.

176. The business relationships and expectancies had a reasonable likelihood of future economic benefit for Plaintiffs.

177.  Defendant Officers knew of the contracts and business relationships and expectancies between Plaintiffs and its customers.

178.  Defendants' actions were improper

179.  As a direct and proximate result of Defendant Officers' wrongful conduct,

180.  Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the community and loss of business opportunities.

WHEREFORE, PLAINTIFF REQUESTS, the Court to enter judgment in their favor and against Defendant Officers in the amount determined, plus exemplary damages, punitive damages, attorney fees, interests and costs.

## COUNT X

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 USC §1962

181.  Plaintiffs incorporate preceding paragraphs as though specifically restated herein.

182.  18 USC §1962(c) provides that: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

183. 18 USC §1964 provides for a civil action by a person injured as a result of a violation described above.

184. Defendants are persons within the scope of the above sections.

185. Defendants are an enterprise engaged in, or the activities of which affect, interstate or foreign commerce.

186. Defendants conduct or participate directly or indirectly in the conduct of the Defendants Affairs.

187. Defendants' conduct has comprised a pattern of racketeering activity.

188. The Defendants have committed overt acts in furtherance of a conspiracy to maintain a pattern of racketeering activity.

189. Plaintiffs have been injured thereby through Defendants actions as described above.

WHEREFORE, PLAINTIFF REQUESTS that this Court enter a judgment in their favor and against Defendants for the following damages:

1. Compensatory damages in the amount determined and that is sufficient to compensate Plaintiffs for their actual, consequential, and incidental losses sustained as a result of Defendant Officers' wrongful actions.

2.  Exemplary damages in the amount determined resulting from Defendant

Officers' intentional and malicious actions.

3.  Punitive Damages.

February 10, 2014                    Respectfully submitted:

                                     /s/ Matthew C Brown
                                     Matthew C. Brown
                                     838 W Long Lake Rd – Ste 100
                                     Bloomfield Hills MI 48302
                                     248-454-1120
                                     Mattbrownatty@gmail.com


## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.


February 10, 2014                    Respectfully submitted:

                                     /s/ Matthew C Brown
                                     Matthew C. Brown
                                     838 W Long Lake Rd – Ste 100
                                     Bloomfield Hills MI 48302
                                     248-454-1120
                                     Mattbrownatty@gmail.com

**VERIFICATION**

I have read and reviewed the above complaint and state that the facts stated are

true and accurate to the best of my knowledge and recollection.

Date: 2|10|14

JAMES SCOTT

Date: 7/10/14

HELEN SCOTT

Subscribed and sworn to before me
on FEBRUARY 10, 2014.

MATTHEW C.BROWN

Notary Public, OAKLAND County
Acting in OAKLAND County
My commission expires 5/15/2014.

36